Perez-Montes v. Sessions is our next case for argument this morning. Mr. Bergen. May it please the Court. My name is Chris Bergen and I'm representing the appellant in this case. How this case arrived at your desk? Through two tours of duty in Afghanistan and basic training and many specialized trainings, my client was never assisted by the U.S. military in becoming a U.S. citizen. We did request that the case be prosecutorially closed with ICE before the immigration proceedings began. They denied that. We did go to trial in front of the I.J. Our case was denied, appealed to the BIA. They refused to remand or reverse, and we did then request a stay of removal from ICE, at which point we were left with this remedy, which is before your honors today. The nature of this case is a request for deferral of removal under the Convention Against Torture only. And the issues that I brought out and I want to bring out today deal with this concept of substantial risk, which was first brought out by Judge Posner and Rodriguez Molinari. He tried to kind of describe how one would interpret the actual standard for deferral of removal, which is more likely than not that someone would be subject to torture if returned. And I think, you know, not to say I know what was in the judge's mind, but I believe the judge was trying to say there can't be a strict- It doesn't make any difference who wrote opinions of the court and what the judge was thinking. Correct. The only question is what was in opinions of the court. Okay. And I must say I don't understand your argument, counsel. The several opinions of the court that have referred to substantial risk referred to it as being less of a risk than more likely than not, which is 50-plus percent. How would you possibly be prejudiced by the immigration officials using a lower standard of risk than the 50 percent standard that you say is legally required? Well, Your Honor, I don't think it was meant to be a lower standard. It was expressly devised as a lower standard. That's what the opinions say. Now, one can doubt that a court of appeals has authority to deviate from statutes and regulations, but the direction of the movement is clear. It is not announced as a higher standard. Even if that is true, Your Honor, or if I agree with you on that, then the issue, though, is still- Then your client has no conceivable complaint. That's the problem. I would disagree, Your Honor, because I think the substantial risk term doesn't- if it's not in a context, if it's not explained as the judge did in Molinari, where he specifically mentioned other terms, like the term wasn't used in a vacuum. He mentioned that there could be substantial-not substantial risk-substantial grounds. To me, the substantial risk term without any kind of explanation by the immigration judge or the Board of Immigration Appeals would be like a dandelion in your yard that's dying. Counsel, suppose we try to quantify risk. What does the record show in this risk about the probability that either a drug dealer or a former GI returned to Mexico will suffer bodily harm? Could you repeat that? What does the record show about the probability that a convicted drug dealer or a former GI will suffer harm in Mexico? We can estimate both the numerator and the denominator, I assume. So what does the record show? I believe the record shows clearly through my client's credible testimony. I'm not asking about your client's testimony. I'm asking about numbers. Population data. Well, I think that's the gist of the idea that you can't, for something this important, you can't make it a numerical. The answer may be nothing. And then the question would be, who has the burden of proof? The answer may be nothing? Well, you have not suggested that there is anything in the record enabling someone to quantify risk, even approximately. And then the question would be, who bears the risk of non-persuasion? Well, I think we did persuade through the credible testimony of my client, through the death of his co-defendant who fled the criminal case, the drug case, through the fact that there's a military bunker that's set up for deported veterans in Mexico that the government itself brought up during the course of the hearing at the RSA 083 line 17 through 18. What's the purpose or need for a deported veteran's bunker in Mexico unless there's a pretty big risk that military veterans are having trouble with cartels or criminal organizations who know that they have military expertise? So I also think the government's own State Department report, along with the many other international IGOs' reports, bolster the claim of mass human rights violations at the border. And I also think that the government has the burden to show that a claim can relocate, and they never proved that at all. Suppose you point to data showing that 900 people were murdered in the city of Chicago last week. How risky does that make it to live in the city of Chicago? Does it mean that anybody is at more than 50 percent risk of being murdered in Chicago? No, it depends on who you are and where you live and where those crimes occurred. Suppose you live in one of the poorest areas of Chicago. What is your risk of being murdered? It's negligible. You can take 900 and divide it by the population. So let's suppose this record shows that 900 drug dealers were murdered in Mexico. How risky does that make it to live in Mexico? We need to know the denominator. What does the record show about the denominator? The record does not show anything about a denominator, although I think to say that there has to be a denominator in a convention against torture claims goes against the spirit of it. Counsel, trying to talk over a judge is not a productive strategy. I don't know how you can estimate risks without both a numerator and a denominator. Is there some way one can do that? I don't think there's a way it can be done the way Your Honor wants to in this context. I don't think human rights are based on mathematical formula. The statute and the regulations say more likely than not. That's a greater than 50% probability. And you say that's the right standard. Well, how do you form a fraction without having a numerator and a denominator? Well, I don't think it's a mathematical formula, though. I think it's, as any trier of fact, they just have to hear the evidence, credible evidence, testimony. They have to see credible evidence, murder of a co-defendant, credible evidence, the government's own State Department reports, which say that the violence is rampant. They warn U.S. citizens not to go to those places. All that adds up to more than more likely than not. It's not like 900. I mean, how many military veterans go back every year versus how many get killed? I don't think that's the proper format. I don't think it's a mathematical formula to decide if someone's life is at risk and they're going to be in danger of being tortured or killed. And I'd like to reserve the last 57 seconds, if I may, for rebuttal. Certainly. Mr. Cohen. Good morning, Your Honors, and may it please the Court. Yadidu Cohen on behalf of the Respondent. Today, an oral argument in response to the Court's questioning, Petitioner contends that he satisfied the standard for deferral of removal under the Convention Against Torture. That argument, however, is nowhere in his brief. It's not been argued in the opening brief, and therefore it's been waived. Instead, Petitioner presented one and only one exhausted argument. He argues the agency held him to a heightened burden of proof for deferral of removal. He concedes that the agency applied the correct substantial risk standard, but argues that the agency misunderstood this standard for one reason or another. He fails to set forth a basis for this argument. Although the regulations state that no person may be removed to a country where it is more likely than not that such a person will be subject to torture, this Court has held that the proper inquiry is whether there is or is not a substantial risk. We, Counsel, we did not hold the regulation invalid. The problem is the difficulty of attaching numeric figures, right? So as I understand those opinions, the panels are trying to re-estimate or provide a verbal formula instead of a numeric formula. We're not – there was no holding of this Court that the regulations are invalid. That's correct. The regulations are what they are. That's correct, and in fact, some panels of this Court, subsequent to Rodriguez-Molinaro, have used the more likely than not formulation. As Your Honor is indicating, it's simply another explanation of the formulation which is set forth in the regulations. My point was merely to say that even though the regulations use the words more likely than not, this Court has explained that what that means is a substantial risk, not invalidating the regulation, but simply providing an explanation that's more manageable for judicial purposes. In this case, both the immigration judge and the Board applied the proper standard and enunciated it very clearly. The record is clear, and therefore, we would ask the Court to deny the petition for review. I'm happy to answer any questions Your Honors have. Otherwise, we would submit on the briefs and the arguments presented therein as well as the arguments presented here today. Thank you. Thank you, Mr. Cohen. Anything further, Mr. Bergen? I think this confusion is exactly my point, Your Honor. I don't believe the immigration judge did enunciate clearly what she understood substantial risk to be, unlike Judge Posner who said maybe some strong suspicion. It is not, counsel. I have already told you once that opinions of the Court are for the Court. Making ad hominem arguments is not helpful. Okay. So this Court has fleshed out what they interpreted substantial risk to mean. The immigration judge did not. There is nothing in the record that shows that she enunciated how she interpreted substantial risk, which I would argue then makes it unclear. If the immigration judge is not going to use the regulation terminology of more likely than not and use substantial risk, they have an affirmative duty to explain and put in context what they meant by substantial risk. Otherwise, it just moves on and on into jurisprudence, where then substantial risk could actually mean what it actually means, which is a much higher standard than more likely than not, substantial risk. Thank you. Thank you, counsel. The case is taken under advisement.